## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**CARDINAL HEALTH 200, LLC**  :
7000 Cardinal Place     :
Dublin, Ohio 43017,     :
            : **Case No. 1:20-cv-23942**
  Plaintiffs,      :
            : **Judge:**
v.           :
            :
**CROSSWELL INTERNATIONAL,** :
**LLC F/KA/ CROSSWELL**   :
**INTERNATIONAL CORPORATION** :
Attn:  Hector L. Lans, Registered Agent :
101 Madeira Avenue     :
Coral Gables, FL 33134,    :

  Defendant.

## COMPLAINT

Plaintiff, Cardinal Health 200, LLC ("CH 200" or "Cardinal Health"), files this Complaint against Defendant, Crosswell International, LLC, formerly known as Crosswell International Corporation ("Crosswell"), and alleges and states as follows:

## PARTIES, JURISDICTION AND VENUE

1. This is an action for the collection of money.

2. CH 200 is a Delaware limited liability company with its principal place of business located in Dublin, Ohio.  Allegiance Corporation, a Delaware corporation with its principal place of business in Dublin, Ohio, is the sole member of CH 200.  CH 200 and Allegiance Corporation are subsidiaries of Cardinal Health, Inc., and CH 200, among other things, specializes in the distribution of medical products.

3. Crosswell is a Florida limited liability company with its principal place of business

located in Coral Gables, Florida.  Upon information and belief, Crosswell is a single-member limited liability company, and the lone member, Hector Lans, is a citizen of Florida.  Crosswell was formerly known as Crosswell International Corporation until it converted to Crosswell International, LLC by operation of its filing with the Florida Division of Corporations on October 12, 2016.

4.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(1), as the amount in controversy exceeds $75,000 and each of the parties are citizens of different states.

5.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) & (2) because Crosswell resides in this District and a substantial part of Crosswell's actions, including its refusals to pay the amounts due and owing, occurred in this District.

## BACKGROUND FACTS

### The Agreement

6.     On or about May 1, 2008, Crosswell and Cardinal Health entered into an International Distribution Agreement.  A true, correct, and complete copy of the International Distribution Agreement is attached hereto, and incorporated herein, as **Exhibit A** ("Agreement").

7.     Among other things, by operation of the Agreement, Cardinal Health granted to Crosswell "the limited right to exclusively promote, market, sell, and distribute" certain products within Colombia.  (Exhibit A, Art. 1.1.)

8.     The parties extended the term of the Agreement on several occasions, extending the Agreement for the final time via the Third Amendment to International Distribution Agreement through June 30, 2016.  A true, correct and complete copy of the Third Amendment to the International Distribution Agreement is attached hereto and incorporation herein, as **Exhibit B**

("Third Amendment").

9.      The parties did not renew the Agreement, which expired and terminated naturally on June 30, 2016.

10.     Article 9.7 of the Agreement provides, "Articles 1.3, 1.5, 2.2, 3.4, 4.3, 4.4, 5.1.2, 5.1.3, 5.2, 6, 8, 9 and Annex 4 survive any termination or expiration of this Agreement.  (Exhibit A, Art. 9.7.)

**The Parties' Contract**

11.     After the Agreement expired, certain terms survived, (*supra*, ¶ 10), but the exclusivity and minimum purchase terms were not among the surviving articles.

12.     Based upon Crosswell's history with Cardinal Health, among other things, Cardinal Health left Crosswell's Trade Account open and fulfilled purchase orders from Crosswell on a purchase order basis after the Agreement expired.

13.      Crosswell ordered and received from Cardinal Health, and Cardinal Health furnished to Crosswell, certain medical products (the "Products") on the Trade Account.

14.     Crosswell did not reject or return the Products to Cardinal Health.

15.     The surviving terms of the Agreement, the parties' course of dealing, and the ordered, delivered, and accepted Products, among other things, establish a contract for the sales of good between the parties.

**The Termination of the Contract and the Line of Credit**

16.     After the Agreement expired, the parties attempted to negotiate a new distribution agreement.

17.     The parties eventually reached an impasse in their negotiations for a new distribution agreement.

18.     On or about February 6, 2019, Cardinal Health provided notice to Crosswell of its intent to terminate negotiations and future product sales to Crosswell. A true, correct, and complete copy of that notice is attached hereto, and incorporated as **Exhibit C** ("Termination Letter").

19.     By way of the Termination Letter, Cardinal Health also advised Crosswell that all outstanding unpaid invoices for any products were immediately due and payable by Crosswell, among other things.  (Exhibit C.)

20.     Crosswell failed to pay Cardinal Health for the Products in full and in accordance with the applicable payment terms.

21.     Subsequently, Cardinal Health made multiple demands to Crosswell for payment of the debt owed on the Trade Account for the Products.

22.     Defendants refused to pay Cardinal Health the debt owed on the Trade Account for the Products.

23.     Article 2.2 of the Agreement, which survived the Agreement's expiration, provides, "In addition to any other rights Cardinal Health may have, Cardinal health shall have the right to charge interest at the rate of 18% per annum, or if lower than 18% per annum, the highest rate allowed by law, for any overdue amounts."  (Exhibit A, Art. 2.2.)

24.     As of August 31, 2020, Crosswell owed $542,404.63 to Cardinal Health on the Trade Account. Attached hereto as **Exhibit D** is a summary exhibit showing each invoice that Cardinal Health provided to Crosswell on the Trade Account that remains fully unpaid and the credits applied to invoices that were partially paid.

## FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT

25.     Cardinal Health hereby adopts the preceding paragraphs and incorporates them by

reference as if fully restated herein.

26.     Cardinal Health and Crosswell entered into a contract for the sale of goods.

27.     Cardinal Health performed in accordance with the terms of the contract by supplying the Products to Crosswell on credit.

28.     Crosswell received and did not reject the Products.

29.     Crosswell failed to timely and fully pay Cardinal Health for the Products in accordance with the applicable payment terms.

30.     Crosswell's failure to timely and fully pay Cardinal Health for the Products constitutes a breach of the contract's terms, including the surviving provisions of the Agreement.

31.     As a result of Crosswell's breach of the contract, Cardinal Health has suffered damages.  In particular, Cardinal Health has been damaged by providing Crosswell with the Products for which Crosswell failed to pay.

32.     Pursuant to the terms of the Agreement, the aggregate sum of $542,404.63, together with additional interest at the rate of 18% interest per annum (or the highest rate allowed by law if such rate is less than 18% per annum) from May 6, 2019 until the date of collection is due and owing to Cardinal Health by Crosswell.

**SECOND CLAIM FOR RELIEF – GOODS SOLD AND DELIVERED**
**(ALTERNATIVE CLAIM PURSUANT TO FLA. R. CIV. P. FORM 1.935)**

33.     Cardinal Health re-alleges and incorporates paragraphs 1 through 24 as if fully set forth herein.

34.     This is an action for damages that exceed $75,000.

35.     From time to time, Crosswell ordered certain medical products, including the Products, from Cardinal Health.

36.     Cardinal Health delivered the Products to Crosswell; and Crosswell accepted, used,

and received all the benefits of the Products at Cardinal Health's expense.

37.     Crosswell has not paid Cardinal Health for the Products.  Specifically, Crosswell has not paid Cardinal Health for $542,404.63 with respect to Products ordered and received from Cardinal Health.

38.     Crosswell owes Cardinal Health the amount due for the Products.

39.     The aggregate sum of $542,404.63, plus additional interest at the rate of 18% interest per annum (or the highest rate allowed by law if such rate is less than 18% per annum) from May 6, 2019 until the date of collection is due and payable by Crosswell to Cardinal Health on the Trade Account.

### THIRD CLAIM – OPEN ACCOUNT
### (ALTERNATIVE CLAIM)

40.     Cardinal Health re-alleges and incorporates paragraphs 1 through 24 as if fully set forth herein.

41.     This is a claim for amounts owed by Crosswell to Cardinal Health for transactions not governed by the written agreements between the parties.

42.     Crosswell owes payment to Cardinal Health for goods sold and delivered by Cardinal Health to Crosswell not governed by the written agreements between the parties with the expectation of further transactions subject to future settlement and adjustment between the parties.

43.     On these transactions, Cardinal Health periodically billed Crosswell for amounts due, and Crosswell did not object to the amounts within a reasonable time.

44.     Exhibit D provides a true and accurate summary of the open invoices on the account.

45.     The prices charged by Cardinal Health to Crosswell for the Products were in accordance with previously agreed upon terms, or the usual and customary prices charged for similar products pursuant to industry standards.

46.     Cardinal Health kept a systematic record of the transactions and all just, lawful offsets have been applied to the Trade Account.

47.     The Trade Account remains unpaid in the total amount of $542,404.63, together with interest at the rate of 18% interest per annum (or the highest rate allowed by law if such rate is less than 18% per annum) from May 6, 2019 until the date of collection.

## FOURTH CLAIM FOR RELIEF – QUANTUM MERUIT
### (ALTERNATIVE CLAIM)

48.     Cardinal Health re-alleges and incorporates paragraphs 1 through 24 as if fully set forth herein.

49.     Cardinal Health provided the  Products to Crosswell not subject to an express written agreement between the parties, but in response to and in reliance upon Crosswell's request that Cardinal Health continue to provide products for Crosswell's benefit and Crosswell's promise of payment.

50.     Crosswell used and accepted the Products, but did not pay Cardinal Health as promised.

51.     Crosswell received a valuable benefit from Cardinal Health in the form of the Products.

52.     Cardinal Health reasonably expected to be paid by Crosswell for the value of the Products.

53.     Crosswell was aware that Cardinal Health was providing the Products with the expectation of being paid for the Products, and Crosswell accepted and retained the Products with

such understanding.

54.     Cardinal Health has been damaged by Crosswell's retention of the Products without payment, in violation of the fundamental principles of justice, equity and good conscience.

55.     It would be unjust for Crosswell to retain the benefits conferred upon it by Cardinal Health.

56.     Cardinal Health is entitled to recover from Crosswell the reasonable value of the Products.

57.     The total reasonable value of the Products is not less than $542,404.63, which reflects the amounts charged by Cardinal Health for the Products retained by Crosswell without making payment.

58.     Cardinal Health lacks an adequate remedy at law.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs, Cardinal Health 200, LLC demand judgment against Defendants Crosswell International, LLC f/k/a Crosswell International Corporation, in the aggregate amount of $542,404.63, plus interest at the rate of 18% interest per annum (or the highest rate allowed by law if such rate is less than 18% per annum) from May 6, 2019 until the date of collection, and all reasonable litigation costs; for an order granting Cardinal Health possession and execution of any Collateral held by Crosswell as applicable; and for such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */ s / Javier A. Pacheco*
    Javier A. Pacheco / Florida Bar No.: 51368
    Sara K. White / Florida Bar No.: 86014
    Porter, Wright, Morris & Arthur LLP
    9132 Strada Place, Third Floor

Naples, FL 34108
(239) 593-2900 (telephone)
(239) 593-2990 (facsimile)
jpacheco@porterwright.com
swhite@porterwright.com
Secondary Emails:
brosado@porterwright.com
pbraxton@porterwright.com
*Attorneys for Plaintiff*

## INTERNATIONAL DISTRIBUTION AGREEMENT

This International Distribution Agreement ("Agreement") is made effective May 1, 2008 ("Effective Date") by and between **Cardinal Health 200**, a U.S. corporation, with registered address at 1430 Waukegan Road, McGaw Park, Illinois 60085 ("Cardinal Health") and **Crosswell International Corporation**, a U.S. corporation with registered address at 101 Madeira Avenue, Second Floor, Coral Gables, Florida 33134 ("Distributor").

**1.    APPOINTMENT & AUTHORITY**

1.1     Appointment and Territory.   Cardinal Health hereby grants to Distributor the limited right to exclusively promote, market, sell, and distribute those products set out in **Annex 1** ("Products") within **Colombia** ("Territory"). Distributor hereby accepts such appointment.

Cardinal Health must not appoint another distributor in the Territory for the promotion, marketing, sale, and distribution of Products to Customers in the Territory.

1.2     Exclusive Purchase.   Distributor must purchase the Products exclusively from Cardinal Health. Distributor must not offer, manufacture, sell, import or in any other way be interested in any product which is of the same kind as, similar to and/or competing with the Products in the Territory, without Cardinal Health's written consent.

Crosswell agrees not to directly or indirectly buy, sell, or negotiate the sale of Products outside the Territory. If the Crosswell buys or sells Products outside the Territory, Cardinal Health shall send a written warning to Crosswell. If Crosswell does not stop the unauthorized sale of Products immediately upon receipt of the warning, Cardinal Health will have the immediate right to terminate this Agreement upon written notice.

Once Crosswell has received the Products from Cardinal and distributes the Products in the Territory, in the event a third party acquires the Products and sells the Products outside the Territory, Crosswell is not liable for the acts of the third party.

1.3     Limited Authority.   Distributor does not have authority to assume or create any obligation or responsibility on behalf of or in the name of Cardinal Health, or to bind Cardinal Health in any manner whatsoever. The relationship between Cardinal Health and Distributor is that of vendor and purchaser and not that of principal and agent. Distributor is an independent contractor.

1.3.1   Cardinal Health has no legal obligation to honor long-term supply contracts or bids entered into by Distributor, unless previously agreed upon with Cardinal Health.

1.3.2   Distributor must not use sub-distributors, agents or other intermediaries for the Products, without Cardinal Health's prior written consent, unless sub-distributors are listed on **Annex 3** and Distributor must cause all sub-distributors to comply at all times with all provisions of this Agreement that apply to Distributor, in particular Articles 3.4 and 7, the Quality Terms & Conditions appearing in **Annex 4 and the Bribery and Corruption Prevention Compliance Certification in Annex 5.**

1.4     Referrals.   Distributor must immediately refer all inquiries or requests related to outside the Territory or outside the health care industry directly to Cardinal Health, and Cardinal Health will refer all leads within the territory to the distributor.

**2.    PRICING & MINIMUMS**

2.1     Pricing, Transfer of Title and Shipping.   Prices for Products are set out in **Annex 1**, with transfer of title and shipping FOB Crosswell Freight Forwarder Miami per Incoterms 2000. Pricing will be provided on an annual basis. On an annual basis, pricing will not increase by more than 5% per catalog number, unless the standard manufacturing cost has increased by more than 5%.

Cardinal Health acknowledges that Crosswell sells Products to the government and governmental agencies of the country of Colombia ("Government"), and enters into pricing agreements with the Government on January 1st of each year.   Therefore price changes for Products sold to the

Exhibit A

government may only be changed in December to be applicable in February of the following year for Products which have been submitted to the Government for bidding and/or for Products already sold under a contract awarded by Government. Upon Cardinal Health's request, Crosswell agrees to provide satisfactory proof of Products which are the subject of Government contracts. Notwithstanding anything in this Agreement, Cardinal Health may not, during the Term of this Agreement, reject or cancel any order for Products to be sold to the Government, except for Crosswell's lack of credit.

2.2   Invoicing & Currency. Invoicing is based on applicable pricing on the date of shipment, and amounts are due within 90 days of invoice date. In addition to any other rights Cardinal Health may have, Cardinal Health shall have the right to charge interest at the rate of 18% interest per annum, or if lower than 18% per annum, the highest rate allowed by law, for any overdue amounts. All payments must be made in U.S. dollars. Cardinal Health may charge handling costs as published in Cardinal Health's price list, or made known to Distributor.

2.3   Ordering Procedure. Distributor must send written purchase orders to Cardinal Health. An order to purchase Products is not binding on Cardinal Health until accepted by written confirmation from Cardinal Health or by delivery of the Products. All orders are subject solely to this Agreement, and no accompanying terms or conditions modify anything herein.

2.4   Failure to Pay. In the event of Distributor's failure to pay and in addition to any termination rights, Cardinal Health has the right to require advance cash or collateral from Distributor. In Cardinal Health's sole opinion, Cardinal Health may also suspend or refuse deliveries. Cardinal Health may also demand additional documentary letters of credit, and/or bank guarantees.

2.5   Minimum Purchases. During every contract year, Distributor must purchase no less than the minimum purchases set out in Annex 2 (the "Minimum Purchases"). Failure to purchase the Minimum Purchases constitutes a material breach of this Agreement, the exclusive appointment pursuant to Article 1.1 automatically converts to a non-exclusive appointment and Cardinal Health shall be entitled, but not obligated, to terminate this Agreement by giving written notice to Distributor at any time after the end of a contract year in which Distributor has failed to make its Minimum Purchases.

3.    DISTRIBUTOR MARKETING
3.1   Best Efforts. Distributor must use its best efforts to actively promote and sell the Products throughout the Territory. Distributor must maintain a competent, professional sales force that is well trained in the Products.

3.2   Forecasting. Distributor must provide quarterly forecasts, and a rolling forecast of expected purchases, stated in number of Products per month, with the first month's forecast consisting of a firm order for Products. Distributor will provide local marketing information when requested by Cardinal Health.

3.3   Advertising Materials. Cardinal Health may supply Distributor with sample copies of any existing catalogues, leaflets, and advertising materials so that Distributor may prepare local marketing materials at Distributor's cost. Regarding the Products, Distributor may only use materials supplied by Cardinal Health, or materials that Cardinal Health has previously approved in writing. Distributor must ensure accurate translations of all Product materials Cardinal Health owns all rights, title, and interest in and to such materials prepared by Distributor.

3.4   Quality/Regulatory. With respect to the Products, Distributor must comply with all Annex 4 Quality Terms & Conditions.

3.5   Intellectual Property. Cardinal Health grants Distributor a limited license to use Cardinal Health's trademarks, trade names, or patent rights with respect to the Products, within the Territory, and solely for the purpose of performing under this Agreement. This limited license ceases immediately upon termination or expiration. Distributor must ensure that all uses have been approved by Cardinal Health, in advance and in writing. Notwithstanding anything to the contrary, Distributor does not acquire any legal right in Cardinal Health intellectual property.

**4.   INVENTORY, CHANGES & RETURNS**

4.1   <u>Inventory</u>.  To ensure Customer supply, Distributor must stock at least two (2) months supply of Products (based on minimums specified in **Annex 2**), or such minimum inventories Cardinal Health may specify in writing.

4.2   <u>Product and Price Changes</u>.  Cardinal Health reserves the right to change, at its sole discretion, Annex 2 Product prices and/or add, delete or modify the Products, as well as the range of Products, or change the source of supply of any Product.  Cardinal Health must inform Distributor of such changes at least sixty (60) days before such changes come into effect.  Nothing in this Agreement obligates Cardinal Health to make available newly released or acquired products, or prevents Cardinal Health from discontinuing the manufacture, sale or promotion of any Product.

4.3   <u>Product Returns</u>.  Product returns are not permitted, unless Distributor receives prior written approval and instructions from Cardinal Health.

4.4   <u>Product Storage</u>.  Based on Distributor's purchase orders, if Distributor refuses to take possession, or fails to provide timely information for delivery, the Products will be stored at Distributor's expense and risk.  Distributor is liable for all additional costs, including transports and storage costs.

**5.   WARRANTIES & INSURANCE**

5.1   <u>Conditional Warranty</u>.  Products are supplied under the following conditions:

    5.1.1   Cardinal Health warrants that it has clear title to the Products and that the Products shall be delivered to Distributor free of liens and encumbrances. Cardinal Health warrants that any Product it manufactures or has made according to its specifications shall meet the claims set forth in its labelling and packaging requirements.  Product distributed by Cardinal Health is warranted by the manufacturer and not by Cardinal Health.  Unless the Product is used in accordance with the directions on its labelling and sold to Customers in the health care industry, this warranty is void and of no effect.  EXCEPT WHERE PROHIBITED BY LAW, CARDINAL HEALTH EXPRESSLY DISCLAIMS ALL OTHER EXPRESS OR IMPLIED WARRANTIES, REPRESENTATIONS, AND CONDITIONS, INCLUDING ANY WARRANTY, REPRESENTATION OR CONDITION OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE SOLE OBLIGATION OF CARDINAL HEALTH AND DISTRIBUTOR'S EXCLUSIVE REMEDY FOR BREACH OF ANY WARRANTY, REPRESENTATION OR CONDITION SHALL BE, AT THE OPTION OF CARDINAL HEALTH, TO REPAIR OR REPLACE THE PRODUCT. CARDINAL HEALTH SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL, INDIRECT OR CONTINGENT DAMAGES OF ANY DESCRIPTION, WHETHER ARISING OUT OF WARRANTY, CONTRACT, TORT OR OTHERWISE. MORE SPECIFIC WARRANTIES MAY ACCOMPANY INDIVIDUAL PRODUCTS.

    5.1.2   The obligation of Cardinal Health for breach of warranty, representation, condition, and/or defects does not arise unless written notice of an alleged violation is made to Cardinal Health immediately after Distributor and/or its Customer has or should have noticed the defect.  In any event, Cardinal Health is liable to Distributor under this Article 5 if and only if Distributor has reported such damages to Cardinal Health in writing within five (5) business days after a claim has been made that may lead to such liability.  Cardinal Health is also relieved from obligation unless written notice of such violation is provided to Cardinal Health within two (2) weeks after any applicable warranty period has expired.

5.1.3   Distributor must hold Cardinal Health harmless from any claim arising from any warranty, representation or condition made or implied by Distributor to the extent that it exceeds or differs from the warranty offered by Cardinal Health.

Cardinal Health agrees to indemnify and hold harmless Crosswell from and against any and all losses (including legal expenses) arising out of any claim by a third party based upon alleged damage to property, personal injury or wrongful death resulting from any defects in any Product, except losses arising from the Distributor's negligence or willful misconduct or misuse of the Product or failure to comply with relevant governmental regulations.  To the extent that any party

seeks to hold Cardinal Health liable for any act or omission of Crosswell, Crosswell agrees to defend, indemnify, and hold harmless Cardinal Health for such liability.

6.  **CONFIDENTIALITY**

All technical and commercial information, including, but not limited to, pricing, trade secrets, suppliers, data regarding processes, and know-how disclosed by either party to the other remains the property of the disclosing party, and must not be disclosed to any third party without prior written consent from the disclosing party, unless disclosure is required by law. This obligation survives termination or non-renewal of this Agreement for three (3) years. Upon termination or non-renewal of this Agreement, the parties must return to each other all confidential information supplied to each other. Prior written approval by both parties must be obtained prior to public announcement or press release regarding this Agreement.

7.   **COMPLIANCE WITH LAWS**

7.1   Distributor represents and warrants that it shall comply with Cardinal Health's Ethics Guide, (available on www.cardinal.com) as amended from time to time which Distributor acknowledges having read and understood as well as all applicable national and local laws, regulations and administrative requirements, including without limitation (a) the anti-bribery legislation of the Territory and the U.S. Foreign Corrupt Practices Act (the "FCPA"); (b) import and export control laws of the United States, to the extent applicable, as well as of the Territory and ; (c) applicable provisions of the Federal Food, Drug, and Cosmetic Act (the "U.S. F.D.A. Act"). Distributor further agrees to execute and comply with the provisions of the Bribery and Corruption Prevention Compliance Certification attached hereto as Annex 5, the terms and conditions of which are made part hereof to the extent consistent with the terms set out in the body of this Agreement. In addition, Distributor agrees to provide Cardinal Health with such additional certifications of its compliance with laws and regulations as Cardinal Health shall from time to time reasonably request.

7.2   Distributor represents and warrants that (i) Distributor's bribery and corruption prevention policies and procedures for the retention and maintenance of sub-distributors are substantially equivalent to Cardinal Health's Bribery and Corruption Prevention Policy and Procedure, and (ii) Distributor will comply with such policies and procedures at all times during the term of this Agreement. During the term of this Agreement, Distributor agrees to provide Cardinal Health with (a) prompt access to Distributor's books and records as necessary (in Cardinal Health's judgment) to confirm Distributor's compliance with the foregoing representation and warranty; and (b) such additional certifications of Distributor's compliance with the FCPA as Cardinal Health may from time to time reasonably request.

Cardinal Health will provide in due time all necessary documents for registration with INVIMA in Colombia, and shall be responsible for arranging for registration. Crosswell will assist Cardinal Health in all manner and respects in order to successfully register the products in Colombia.

8.   **TERM & TERMINATION**

8.1   Term and Evergreen. This Agreement begins on the Effective Date and stays in force for three (3) years ("Initial Term"). Thereafter, the parties shall negotiate in good faith as to whether to conclude an additional agreement for an additional two (2) years

8.2   Termination. Notwithstanding anything to the contrary, this Agreement may be terminated immediately by either party if the other party commits a breach of this Agreement, and if this breaching party fails to remedy such breach within thirty (30) days of receiving written notice of such breach. Termination of this Agreement does not prejudice any other right for remedy of either party in respect of any breach. Upon termination of this Agreement:

8.2.1   Outstanding unpaid invoices for any Products are immediately due and payable by Distributor;

8.2.2   Cardinal Health is entitled (but not obliged) to repurchase from Distributor all or part of any stocks of the Products held by Distributor, at a price equal to the price paid by Distributor. If Cardinal Health, in its sole discretion, does not elect to repurchase all

remaining Cardinal Health Product stock, Distributor may sell remaining Products for a period of sixty (180) days following the date of termination or expiration;

8.2.3  Cardinal Health also has the option to fulfil, in whole or in part, Distributor's contracted commitments for Products for orders prior to the date of termination or expiration;

8.2.4  Distributor, at its own expense and within thirty (30) days, shall send to Cardinal Health or otherwise dispose of in accordance with the directions of Cardinal Health all samples of the Products and any advertising, promotional or sales material relating to the Products; and

8.2.5  Distributor expressly acknowledges that it is not entitled to compensation for loss of distribution rights, lost profits or any similar rights, or for loss of goodwill. Neither Distributor nor his personnel are entitled to any indemnification or any compensation of whatever kind that may result from expiration or termination.

## 9.   MISCELLANEOUS

9.1  <u>Mutual Indemnification</u>. Each party must fully defend, indemnify, and keep the other free from any claim or liability, if such claim or liability relates to any act or failure to act of the indemnifying party with respect to such party's breach of any provision(s) in this Agreement, or negligence or improper conduct related to the Products or the performance of this Agreement.

9.2  <u>Notices</u>. Legal notice is sufficient if in writing, and sent by return receipt registered air mail, or by courier service which provides evidence of delivery, to the address provided in the preamble of this Agreement. Notices are effective upon five (5) business days.

9.3  <u>Modifications</u>. This Agreement may be amended or modified only if in writing and signed by duly authorized representatives of both parties. The failure of either party to enforce any of the provisions hereof does not constitute a waiver of the party's right thereafter to enforce any such provisions or to enforce any other provisions of the Agreement.

9.4  <u>Force Majeure</u>. Neither party is accountable for failure or delay of performance under this Agreement due to reason(s) of force majeure. Both parties must use best reasonable efforts to mitigate in the case of force majeure. If performance is delayed more than sixty (60) days, either party may terminate this Agreement with immediate effect. However, force majeure does not apply to Distributor's payment obligations.

9.5  <u>Assignment</u>. Either party may assign this Agreement, and/or any right within, in whole or in part by providing written notice.

9.6  <u>Governing Law and Severability</u>. This Agreement (including its Annexes, which form an integral part of the Distribution Agreement) are governed exclusively by the laws of U.S.A., excluding its conflict of law rules, and excluding the UN Convention on Contracts for the International Sale of Goods and the UN Convention on the Limitation Period for the International Sale of Goods. If any provision were to be or become fully or partly invalid or unenforceable for any reason whatever, or to violate any applicable law, the same shall be considered divisible as to such provision and such provision shall be deemed deleted here from, and the remainder hereof shall be valid and biding as if such provision were not included herein. The parties hereto shall then, if necessary negotiate in good faith an appropriate amendment to this Agreement.

9.7  <u>Survival</u>. Articles 1.3, 1.5, 2.2, 3.4, 4.3, 4.4, 5.1.2, 5.1.3, 5.2, 6, 8, 9 and Annex 4 survive any termination or expiration of this Agreement.

9.8  <u>Arbitration</u>. All disputes, controversies or differences, other than for the collection of money, which may arise between the parties in connection with this Agreement or the breach thereof must be referred to final and binding arbitration before a single arbitrator in Miami, Florida, U.S.A., under the international arbitration rules and procedures of the International Chamber of Commerce. The language of the arbitration is English. In the event that the arbitrator should determine that the matter(s) in dispute may be resolved by a review of the written record alone, and that a hearing is not necessary, each party waives the right to a hearing.

**IN WITNESS WHEREOF,** the parties have by their duly authorized officers executed this Agreement as of the date first above written.

| "Cardinal Health" | "Distributor" |
|---|---|
| **Cardinal Health 200** | **CROSSWELL INTERNATIONAL CORPORATION** |

Signature: _____   Signature: _____

Name: _Mario Fernandez_____   Name: ___Hector Lans_____

Title: __V.P./G.M. Latin America_____   Title: _____President_____

Phone: _____(305) 551-0462_____   Phone: _____(305) 648-0777_____

Facsimile: _____   Facsimile: _____

## ANNEX 1 - Products & Pricing

| Catalogue/ Code No. | Product Description | Quantity | Price In $U.S. |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

## ANNEX 2 - Minimum Purchases

| Contract Year | Minimum Total Yearly Purchases in $ U.S. |
|---|---|
| July 1 2007 to June 30, 2008 | $2,500,000.00 |
| July 1 2008 to June 30, 2009 | $2,875,000.00 |
| July 1 2009 to June 30, 2010 | $3,220,000.00 |

## ANNEX 4 - Quality Terms & Conditions

1.  Cardinal Health shall provide all Products in conformity with the provisions of the applicable regulatory authority as required by the law of the Territory applicable to the Products. Cardinal Health shall provide Products with labeling in the appropriate language(s), or with recognized or standardized symbols, as required by the law of the Territory. Cardinal Health shall make available upon request of Distributor corresponding declarations of conformity and CE certificates, if applicable.

2.  Distributor has a duty to inspect the Products upon arrival. Distributor must bring defects in the Products that are apparent to the attention of Cardinal Health no later than fourteen (14) days after receipt of the Products. Defects which are not found to exist until later upon use or consumption by Distributor or by Customers must be brought to the attention of Cardinal Health no later than fourteen (14) days after discovery of such defect. Cardinal Health's liability lapses if Distributor does not comply with these stipulations. The Distributor has a duty to take all reasonable measures in order to limit the loss or damage.

3.  Distributor shall give prompt written notice to Cardinal Health if Distributor becomes aware of any actual defect or condition which may alter the quality of the Products in any material respect or may render any of the Products in violation of any law or regulation of the Territory.

4.  From time to time and during regular working hours, Distributor shall permit representatives from Cardinal Health to inspect the inventories of Products maintained by Distributor. To assist in preventing conflict between exclusive agents and distributors of Cardinal Health, Distributor shall notify Cardinal Health in writing of any requests for the Products that it receives originating outside the Territory.

5.  Distributor is not permitted to alter the Products or to give or to affix on the Products another brand name or packaging without the prior written consent of Cardinal Health. Distributor shall not over-label without the prior written consent of Cardinal Health. Distributor shall not alter, remove or otherwise modify the packaging, labeling or product insert sheets furnished by Cardinal Health for the Products.

6.  Statements by or on behalf of Cardinal Health relating to quality, composition, handling/treatment in the broadest sense, application possibilities, properties, etc. of Products only apply as guarantees if they have been made by Cardinal Health in writing expressly in the form of a guarantee.

7.  Distributor shall make no claims or instructions for use, reuse or disposal different from those provided by Cardinal Health. Distributor shall ensure that no incorrect or misleading information on the Products is given. Distributor may not in any way try to change the perception of the intended use of the Product.

8.  Distributor must have a system in place and written procedures to cover the receipt, storage, and delivery of the Products. Distributor shall ensure that the storage space shall be, under all circumstances, sufficient to store the Products so as to preserve and protect the Products, including but not necessarily limited to storing Products only in a manner consistent with the specifications of Cardinal Health or the applicable manufacturer, in order to prevent damage to or deterioration of the Products.

9.  During the term of this Agreement and for five (5) years thereafter or such longer period as may be required by the laws of the Territory, in order to assist Cardinal Health in the event of a Product recall or similar operation Distributor shall establish, maintain, and make available to representatives of Cardinal Health complete and accurate records, including a register of lot numbers, catalogue numbers, and individual product numbers and Customer names and addresses for all Products sold by Distributor. Distributor shall notify the end-user Customer base of any corrective actions. If the Customer is not the end-user of the Products, Distributor shall require the Customer to maintain a similar register, including the names and addresses of the end-users.

10. Each party shall provide the other party with written notice within forty-eight (48) hours of receipt of any complaints with respect to the Products that have potential government regulatory impact. Such notice shall include, without limitation, sufficient information to allow the other party to fulfil its regulatory reporting obligations.

11. In the event that a recall of a Product is necessitated by any reason within the control of Distributor, Distributor shall bear all costs and expenses of such recall, including, without limitation, costs of notifying Customers, Customer refunds, costs of returning Products, lost profits, and other expenses incurred to meet obligations to third parties. Distributor shall not commence any recalls of the Products without the prior written approval of Cardinal Health, which approval shall not be unreasonably withheld. In the event of a recall of any nature, the parties shall co-operate fully with each other, including without limitation communications with Customers.

12. Distributor shall report to Cardinal Health all Customer Product complaints in a timely manner in order that all necessary investigations and actions can take place. In the event of a Customer Product complaint, Cardinal Health shall provide Distributor in writing the results of investigations. Unless otherwise directed by Cardinal Health, Distributor is responsible for responding to Customers.

   (a) In the case of a Customer Product complaint, the following descriptions corresponding to the following definitions are classified as "Medical Complaints":

      (i) Complaints are classified as an "Incident" in the event of (1) death or (2) serious health deterioration of a patient, user or other person. A serious deterioration in state of health can include: (1) life-threatening illness or injury, (2) permanent impairment of a body function or permanent damage to a body structure, and/or (3) a condition necessitating medical or surgical intervention to prevent permanent impairment of a body function or permanent damage to a body structure.

      (ii) Complaints that might have led to death or serious deterioration in health (the non-occurrence of such a result might have been due to other fortunate circumstances or to the intervention of healthcare personnel) are classified "Near Incidents." To classify a complaints as a Near Incident, it is sufficient that an incident associated with a device happened and (1) the incident was such that, if it occurred again, it might lead to death or serious deterioration in health, or (2) an examination of the Product or the information supplied with the Product indicated some factor (for example, a deterioration in characteristics or performances, or a shortcoming in the information) which could lead to an incident involving death or serious deterioration in health.

   (b) Distributor, when aware of a Medical Complaint by any communication means (e.g. phone, fax, letter, e-mail) must notify Cardinal Health in writing as soon as possible (but no later than three (3) business days).

   (c) Distributor shall ensure follow-up of an Incident with the competent authority of the Territory. Distributor shall not initiate a Field Corrective Action (FCA) without the written approval of Cardinal Health, except if urgently requested by a competent authority. Should this occur, Distributor shall immediately notify Cardinal Health in writing. Notification of Product recall to the competent authority shall be performed by Distributor on behalf of CH in the required time frames. Cardinal Health shall approve English version of notification text before release. If required by the competent authority, translation of the reporting text shall be performed by Distributor.

   (d) Cardinal Health shall: (i) evaluate and confirm the classification of a Product complaint; (ii) determine if a Product complaint may lead to an FCA and perform a close investigation with the manufacturing unit for such decision; and (iii) ensure that Distributor gets all required information to respond to the competent authority and to the Customer(s) in a timely fashion.

**Annex 5 - Bribery and Corruption Prevention Compliance Certification**

I *HECTOR L. LANS* [name] a duly authorized representative of *Crosswell Int'l.* [name of distributor] ("Distributor") do hereby certify and confirm to Cardinal Health, Inc. and it s affiliates ("Cardinal Health") for and on behalf of Distributor, that:

1.    Distributor and any affiliated or related companies are in good standing in all jurisdictions where the Distributor is incorporated, does business and/or seeks to do business as required by applicable law. Neither Distributor, nor any of its owners, directors, officers, employees, sub-distributors or agents has been subject to an investigation relating to or been convicted of or pleaded guilty to an offense involving fraud, corruption, or moral turpitude, nor has any such person been listed by any government agency as debarred, suspended, proposed for suspension or debarment, or otherwise ineligible for government procurement programs. Neither Distributor, any of its owners or controlling shareholders, or any related company or any current or former employee is on any government restricted parties list (including but not limited to the U.S. Treasury Department's List of Specially Designated Nationals and Blocked Persons or the US Department of Commerce's Denied Persons List or Entity List).

2.    Neither I, the undersigned, nor any officer, director, stockholder, employee, representative or agent of Distributor has provided, offered to provide, or agreed to provide, or will during the course of Distributor's relationship with Cardinal Health, provide, offer to provide, or agree to provide any loan, gift, donation, payment, or other things of value (including but not limited to, contracts, entertainment, employment, hospitalities and sponsorships) directly or indirectly, whether in cash or in kind, to or for the benefit of any foreign official and/or foreign political party, to obtain or retain business or to secure any improper advantage for Cardinal Health or relating to its products. For purposes of this certification, the term "foreign official" includes:

   a.    any employee or officer of a government of a foreign country (*i.e.*, a country other than the United States), including any federal, regional or local department, agency, or enterprise owned or controlled by the foreign government;

   b.    any official of a foreign political party;

   c.    any official or employee of a public international organization;

   d.    any person acting in an official capacity for, or on behalf of, such entities; and

   e.    any candidate for foreign political office.

3.    Neither Distributor nor any officer, director, owner or controlling shareholder, employee, representative, sub-distributor or agent of Distributor is a foreign official, as defined above in paragraph 5(a)-(e) or an agency or arm of, or entity owned or controlled by, a non-U.S. government.

4.    Should Distributor learn of any instances of the prohibited activities described above in paragraph 4, or if there are any changes in the ownership or control of Distributor, it will immediately advise Cardinal Health's Chief Ethics and Compliance Officer by telephone (614-757-7504 in the United States), electronic mail at GMB-DUB-ethics&compliance @cardinal.com or in writing at Cardinal Health, 7000 Cardinal Place, Dublin, Ohio 43017 USA. Furthermore, the Distributor agrees that Cardinal Health has the right to cease supply and/or sale to Distributor without notice and without liability or obligation of any sort accruing to Cardinal Health if any violation of Paragraph 4 by Distributor is determined or reasonably suspected by Cardinal Health.

5.    Distributor, its employees, directors, and any of its sub-distributors or agents involved by or at the direction of Distributor in selling and/or distributing Cardinal Health products shall comply with Cardinal Health's Bribery and Corruption Prevention Policy and Cardinal Health's Standards of Business Conduct (available on www.cardinal.com or in hard copy upon request) as amended from time to time.

6.   Distributor certifies that it is or is an affiliate of a U.S. company with a policy and compliance program addressing compliance with the U.S. Foreign Corrupt Practices Act. ___yes ✓no

7.   Distributor acknowledges having received a copy of Cardinal Health's Bribery and Corruption Prevention Policy and has conducted or will conduct training for all of its employees, sub-distributors and agents that will be involved in Cardinal Health business using Cardinal Health's training materials together with any other training materials that are of substantially similar or better quality.

8.   Distributor agrees to provide Cardinal Health with (a) prompt access to its books and records as necessary in Cardinal Health's judgment to confirm Distributor's compliance with this certification, and (b) such additional certifications of its compliance with laws and regulations as Cardinal Health may from time to time reasonably request. Distributor further agrees that should Cardinal Health reasonably determine that at any time during the parties' relationship, any of the responses, information, and statements provided in this Certification is or has been incorrect, incomplete, inaccurate, untruthful, or misleading, Cardinal Health has the right to cease supply or sale to Distributor without notice and without liability or obligation of any sort accruing to Cardinal Health.

_HECTOR L. LANS_                Date: _4/29/08_

Name: _HECTOR L. LANS_

Title: _President_



## THIRD AMENDMENT

### INTERNATIONAL DISTRIBUTION AGREEMENT

This Third Amendment (this "Amendment") to the International Distribution Agreement dated May 1, 2008 (and previously amended by First Amendment dated March 19, 2012 and Second Amendment dated July 1, 2014, collectively the "Agreement"), is by and between Cardinal Health 200, LLC ("Cardinal Health") and Crosswell International Corporation ("Distributor") and is effective as of July 1, 2015 (the "Amendment Effective Date").

WHEREAS, both parties wish to amend the Agreement to provide for an extension of the term and convert Distributor's status to that of a non-exclusive distributor.

NOW, THEREFORE, the parties, intending to be legally bound, hereby agree as follows:

1.  **Term.** Section 8.1 of the Agreement is hereby removed in its entirety and replaced with the following:

    "8.1 This Agreement begins on the Effective Date and stays in force through June 30, 2016."

2.  All defined terms used in this Amendment shall have the meaning ascribed to them in the Agreement unless otherwise defined herein. Any conflicts arising between this Amendment and the Agreement shall be resolved in favor of the provisions of this Amendment. Except as set forth herein, the terms and conditions of the Agreement remain in full force and effect.

3.  This Amendment may be executed in counterparts, each of which, when executed and delivered, shall be deemed to be an original and all of which together shall constitute one and the same document.

**IN WITNESS WHEREOF,** the parties hereto have executed this Amendment to the Agreement as of the date first above written.

**Cardinal Health 200, LLC**

By: _____

Name: Debbie Weitman

Title: SVP

**Crosswell International Corporation**

By: _____

Name: HECTOR L. LANS

Title: President

Exhibit B

**Cardinal**Health™

Cardinal Health
14201 NW 60th Avenue
Miami Lakes, FL  33014
(786) 313-2000

February 6, 2019

Mr. Hector Lans
**Crosswell International Corporation**
101 Madeira Ave,
CORAL GABLES, FL 33134

**Re**: International Distribution Agreement dated as of May 1, 2008, entered by and between Cardinal Health 200, LLC ("Cardinal Health") and Crosswell International Corporation ("Crosswell"), as the same has been amended by the First Amendment dated March 19, 2012, Second Amendment dated July 1, 2014, and the Third Amendment dated July 1, 2015 (collectively referred to herein as the "Agreement")

Dear Mr. Lans:

This letter shall serve as notice of Cardinal Health's intent to terminate further contract negotiations and product sales to Crosswell.  As you are aware, the above-referenced Agreement expired on June 30, 2016.  Despite the expiration of the Agreement, Cardinal Health continued product sales to you on a purchase order basis without any contractual commitment. Over the last several months, Cardinal Health has attempted to negotiate in good faith a new distribution agreement with Crosswell for the purchase of our products; however, it appears we are now at an impasse which makes further discussions meaningless.

Accordingly, following a decision made in the Cardinal Health headquarters in Dublin Ohio, we are hereby notifying Crosswell that Cardinal Health will no longer accept any purchase orders from Crosswell.  Therefore, all outstanding unpaid and undisputed invoices for any products shall immediately be due and payable by Crosswell. Moreover, Crosswell shall transfer all registrations, licenses, files, data, or other documentation related to Cardinal Health. Also, Crosswell shall send to Cardinal Health or otherwise dispose of in accordance with the directions of Cardinal Health any advertising, promotional or sales material relating to Cardinal Health and its products. Likewise, Crosswell has the duty to remove Cardinal Health's name and trademarks from all of its material and documentation including but not limited to its website and any other internal or external communication

If you have any questions, please do not hesitate to contact us.

Sincerely yours,

**Jorge Sahlieh**
VP & GM LatAm
Cardinal Health 200 L.L.C.
14201 NW 60th Ave, Miami Lakes, FL 33014

Exhibit C

**Crosswell International Account Statement**
September 11, 2020

| Account | PO Number | Reference | Document Number | Days Past Due | Document Date | Due Date | Invoice | Amount Due | Comments |
|---------|-----------|-----------|-----------------|---------------|---------------|----------|---------|-----------|----------|
| 11009375 | 8520 | 7081077589 | 7081808676 | 905 | 3/21/2018 | 3/21/2018 | 7081808676 | -42.34 | Credit for 7081077589 |
| 11009375 | 8418 | 7079260361 | 7081920986 | 903 | 3/23/2018 | 3/23/2018 | 7081920986 | -308.32 | Credit for 7079260361 |
| 11009375 | 8520 | 7081467936 | 7082377358 | 892 | 4/3/2018 | 4/3/2018 | 7082377358 | -31.90 | Credit for 7081467936 |
| 11009375 | 8520 | 7081189273 | 7082453441 | 891 | 4/4/2018 | 4/4/2018 | 7082453441 | -122.99 | Credit for 7081189273 |
| 11009375 | 8486 | 7079277398 | 7082453440 | 891 | 4/4/2018 | 4/4/2018 | 7082453440 | -403.44 | Credit for 7079277398 |
| 11009375 | 8709 | 7085808763 | 7087163644 | 779 | 7/25/2018 | 7/25/2018 | 7087163644 | -68.88 | Credit for 7085808763 |
| 11009375 | 8709 | 7085808763 | 7088391527 | 751 | 8/22/2018 | 8/22/2018 | 7088391527 | -21.40 | Credit for 7085808763 |
| 11009375 | 8823 | 7089597856 | 7090354435 | 704 | 10/8/2018 | 10/8/2018 | 7090354435 | -82.69 | Credit for 7089597856 |
| 11009375 | 8823 | 7089562241 | 7090354434 | 704 | 10/8/2018 | 10/8/2018 | 7090354434 | -88.10 | Credit for 7089562241 |
| 11009375 | 8823 | 7089838084 | 7090354433 | 704 | 10/8/2018 | 10/8/2018 | 7090354433 | -46.35 | Credit for 7089838084 |
| 11009375 | 8823 | 7089666265 | 7090664084 | 697 | 10/15/2018 | 10/15/2018 | 7090664084 | -496.14 | Credit for 7089666265 |
| 11009375 | 8848 | 7090567977 | 7090755783 | 695 | 10/17/2018 | 10/17/2018 | 7090755783 | -116.84 | Credit for 7090567977 |
| 11009375 | 8848 | 7090567978 | 7091033022 | 690 | 10/22/2018 | 10/22/2018 | 7091033022 | -39.57 | Credit for 7090567978 |
| 11009375 | 8709 | 7086388601 | 7091102006 | 689 | 10/23/2018 | 10/23/2018 | 7091102006 | -13.95 | Credit for 7086388601 |
| 11009375 | 8362 | 7074043826 | 7091102007 | 689 | 10/23/2018 | 10/23/2018 | 7091102007 | -165.38 | Credit for 7074043826 |
| 11009375 | 8848 | 7090569669 | 7091259514 | 686 | 10/26/2018 | 10/26/2018 | 7091259514 | -89.38 | Credit for 7090569669 |
| 11009375 | 8868 | 7091094906 | 7091343168 | 683 | 10/29/2018 | 10/29/2018 | 7091343168 | -62.10 | Credit for 7091094906 |
| 11009375 | 8848 | 7090569670 | 7091343169 | 683 | 10/29/2018 | 10/29/2018 | 7091343169 | -144.32 | Credit for 7090569670 |
| 11009375 | 8868 | 7090864884 | 7091473599 | 680 | 11/1/2018 | 11/1/2018 | 7091473599 | -35.02 | Credit for 7090864884 |
| 11009375 | 8868 | 7090776984 | 7091570920 | 678 | 11/3/2018 | 11/3/2018 | 7091570920 | -82.69 | Credit for 7090776984 |
| 11009375 | 8793 | 7091499025 | 7091851191 | 672 | 11/9/2018 | 11/9/2018 | 7091851191 | -98.40 | Credit for 7091499025 |
| 11009375 | 8868 | 7091673518 | 7092016485 | 667 | 11/14/2018 | 11/14/2018 | 7092016485 | -9.27 | Credit for 7091673518 |
| 11009375 | 8848 | 7091673515 | 7092016484 | 667 | 11/14/2018 | 11/14/2018 | 7092016484 | -77.90 | Credit for 7092016484 |
| 11009375 | 8868 | 7090735212 | 7092068294 | 666 | 11/15/2018 | 11/15/2018 | 7092068294 | -313.57 | Credit for 7090735212 |
| 11009375 | 8793 | 7091499025 | 7092119757 | 665 | 11/16/2018 | 11/16/2018 | 7092119757 | -52.69 | Credit for 7091499025 |
| 11009375 | 8868 | 7090735212 | 7092240124 | 661 | 11/20/2018 | 11/20/2018 | 7092240124 | -186.30 | Credit for 7090735212 |
| 11009375 | 8848 | 7091983630 | 7092700291 | 651 | 11/30/2018 | 11/30/2018 | 7092700291 | -58.42 | Credit for 7091983630 |
| 11009375 | 8868 | 7091983629 | 7092700289 | 651 | 11/30/2018 | 11/30/2018 | 7092700289 | -119.40 | Credit for 7091983629 |
| 11009375 | 8279 | 7070405819 | 7092817363 | 647 | 12/4/2018 | 12/4/2018 | 7092817363 | -247.00 | Credit for 7070405819 |
| 11009375 | 8868 | 7091769907 | 7093241986 | 639 | 12/12/2018 | 12/12/2018 | 7093241986 | -31.16 | Credit for 7091769907 |
| 11009375 | 8848 | 7092092736 | 7093302133 | 638 | 12/13/2018 | 12/13/2018 | 7093302133 | -39.57 | Credit for 7092092736 |
| 11009375 | 8751 | 7092177514 | 7093302134 | 638 | 12/13/2018 | 12/13/2018 | 7093302134 | -46.75 | Credit for 7092177514 |
| 11009375 | 8887 | 7092671145 | 7093353912 | 637 | 12/14/2018 | 12/14/2018 | 7093353912 | -11.48 | Credit for 7092671145 |
| 11009375 | 8793 | 7093263886 | 7093743762 | 627 | 12/24/2018 | 12/24/2018 | 7093743762 | -56.10 | Credit for 7093263886 |
| 11009375 | 8887 | 7092538940 | 7093743761 | 627 | 12/24/2018 | 12/24/2018 | 7093743761 | -114.56 | Credit for 7092538940 |
| 11009375 | 8887 | 7092671145 | 7093743760 | 627 | 12/24/2018 | 12/24/2018 | 7093743760 | -78.93 | Credit for 7092671145 |
| 11009375 | 8793 | 4006879231 | 7094003268 | 620 | 12/31/2018 | 12/31/2018 | 7094003268 | -45.36 | Credit Memo Request 4006879231 |
| 11009375 | 8751 | 1053194558 | 7088909411 | 617 | 9/5/2018 | 1/3/2019 | 7088909411 | 840.40 | Open in Full & Past Due |
| 11009375 | 8813 | 1054565347 | 7088909412 | 617 | 9/5/2018 | 1/3/2019 | 7088909412 | 1,841.41 | Open in Full & Past Due |
| 11009375 | 8751 | 1053194558 | 7088909413 | 617 | 9/5/2018 | 1/3/2019 | 7088909413 | 705.84 | Open in Full & Past Due |
| 11009375 | 8887 | 7093399332 | 7094097389 | 617 | 1/3/2019 | 1/3/2019 | 7094097389 | -35.50 | Credit for 7093399332 |
| 11009375 | 8486 | 7079486915 | 7094321516 | 611 | 1/9/2019 | 1/9/2019 | 7094321516 | -171.13 | Credit for 7079486915 |
| 11009375 | 8793 | 1054057381 | 7089228401 | 610 | 9/12/2018 | 1/10/2019 | 7089228401 | 7,894.90 | Open in Full & Past Due |
| 11009375 | 8751 | 1053194558 | 7089228402 | 610 | 9/12/2018 | 1/10/2019 | 7089228402 | 367.50 | Open in Full & Past Due |



Exhibit D

**Crosswell International Account Statement**
**September 11, 2020**

| Account | PO Number | Reference | Document Number | Days Past Due | Document Date | Due Date | Invoice | Amount Due | Comments |
|---|---|---|---|---|---|---|---|---|---|
| 11009375 | 8709 | 1052423253 | 7089228403 | 610 | 9/12/2018 | 1/10/2019 | 7089228403 | 313.53 | Open in Full & Past Due |
| 11009375 | 8918 | 7093953386 | 7094419546 | 610 | 1/10/2019 | 1/10/2019 | 7094419546 | -92.26 | Credit for 7093953386 |
| 11009375 | 8823 | 1054926677 | 7089562241 | 603 | 9/19/2018 | 1/17/2019 | 7089562241 | 34,791.39 | Open in Full & Past Due |
| 11009375 | 8709 | 1052423253 | 7089562240 | 603 | 9/19/2018 | 1/17/2019 | 7089562240 | 727.74 | Open in Full & Past Due |
| 11009375 | 8709 | 1052423253 | 7089562242 | 603 | 9/19/2018 | 1/17/2019 | 7089562242 | 134.91 | Open in Full & Past Due |
| 11009375 | 8751 | 1053194558 | 7089562243 | 603 | 9/19/2018 | 1/17/2019 | 7089562243 | 1,220.01 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7089597856 | 602 | 9/20/2018 | 1/18/2019 | 7089597856 | 4,343.49 | Open in Full & Past Due |
| 11009375 | 8887 | 7092311343 | 7094836832 | 601 | 1/19/2019 | 1/19/2019 | 7094836832 | -770.41 | Credit for 7092311343 |
| 11009375 | 8887 | 7092957591 | 7094836834 | 601 | 1/19/2019 | 1/19/2019 | 7094836834 | -192.44 | Credit for 7092957591 |
| 11009375 | 8918 | 7093498486 | 7094836833 | 601 | 1/19/2019 | 1/19/2019 | 7094836833 | -429.83 | Credit for 7093498486 |
| 11009375 | 8823 | 1054926677 | 7089666261 | 601 | 9/21/2018 | 1/19/2019 | 7089666261 | 46.00 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7089666262 | 601 | 9/21/2018 | 1/19/2019 | 7089666262 | 68.88 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7089666263 | 601 | 9/21/2018 | 1/19/2019 | 7089666263 | 83.43 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7089666264 | 601 | 9/21/2018 | 1/19/2019 | 7089666264 | 530.10 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7089666265 | 601 | 9/21/2018 | 1/19/2019 | 7089666265 | 25,574.63 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7089666266 | 601 | 9/21/2018 | 1/19/2019 | 7089666266 | 114.66 | Open in Full & Past Due |
| 11009375 | 8918 | 7094289206 | 7095005163 | 597 | 1/23/2019 | 1/23/2019 | 7095005163 | -91.84 | Credit for 7094289206 |
| 11009375 | 8918 | 7094427303 | 7095005162 | 597 | 1/23/2019 | 1/23/2019 | 7095005162 | -134.60 | Credit for 7094427303 |
| 11009375 | 8823 | 1054926677 | 7089834456 | 596 | 9/26/2018 | 1/24/2019 | 7089834456 | 1,405.96 | Open in Full & Past Due |
| 11009375 | 8751 | 1053194558 | 7089838081 | 596 | 9/26/2018 | 1/24/2019 | 7089838081 | 44.59 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7089838082 | 596 | 9/26/2018 | 1/24/2019 | 7089838082 | 173.23 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7089838083 | 596 | 9/26/2018 | 1/24/2019 | 7089838083 | 518.49 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7089838084 | 596 | 9/26/2018 | 1/24/2019 | 7089838084 | 512.59 | Open in Full & Past Due |
| 11009375 | 8887 | 7093567478 | 7095225186 | 591 | 1/29/2019 | 1/29/2019 | 7095225186 | -415.17 | Credit for 7093567478 |
| 11009375 | 8391 | 7079220986 | 7095225180 | 591 | 1/29/2019 | 1/29/2019 | 7095225180 | -165.38 | Credit for 7079220986 |
| 11009375 | 8848 | 7092213915 | 7095225182 | 591 | 1/29/2019 | 1/29/2019 | 7095225182 | -175.26 | Credit for 7092213915 |
| 11009375 | 8918 | 7093567479 | 7095225183 | 591 | 1/29/2019 | 1/29/2019 | 7095225183 | -165.38 | Credit for 7093567479 |
| 11009375 | 8418 | 7077281748 | 7095225184 | 591 | 1/29/2019 | 1/29/2019 | 7095225184 | -490.56 | Credit for 7077281748 |
| 11009375 | 8823 | 1054926677 | 7090138197 | 589 | 10/3/2018 | 1/31/2019 | 7090138197 | 422.25 | Open in Full & Past Due |
| 11009375 | 8793 | 1054057381 | 7090138198 | 589 | 10/3/2018 | 1/31/2019 | 7090138198 | 355.01 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7090138199 | 589 | 10/3/2018 | 1/31/2019 | 7090138199 | 60.44 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7090138200 | 589 | 10/3/2018 | 1/31/2019 | 7090138200 | 13.94 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7090130191 | 589 | 10/3/2018 | 1/31/2019 | 7090130191 | 2,786.30 | Open in Full & Past Due |
| 11009375 | 8793 | 1054057381 | 7090130192 | 589 | 10/3/2018 | 1/31/2019 | 7090130192 | 4,157.03 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7090130193 | 589 | 10/3/2018 | 1/31/2019 | 7090130193 | 15,492.44 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7090130194 | 589 | 10/3/2018 | 1/31/2019 | 7090130194 | 86.10 | Open in Full & Past Due |
| 11009375 | 8751 | 1053194558 | 7090138195 | 589 | 10/3/2018 | 1/31/2019 | 7090138195 | 20,686.95 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7090138196 | 589 | 10/3/2018 | 1/31/2019 | 7090138196 | 57.27 | Open in Full & Past Due |
| 11009375 | 8918 | 7094650674 | 7095401343 | 588 | 2/1/2019 | 2/1/2019 | 7095401343 | -17.75 | Credit for 7094650674 |
| 11009375 | 8918 | 7094702182 | 7095401345 | 588 | 2/1/2019 | 2/1/2019 | 7095401345 | -26.78 | Credit for 7094702182 |
| 11009375 | 8918 | 7094427303 | 7095401346 | 588 | 2/1/2019 | 2/1/2019 | 7095401346 | -35.02 | Credit for 7094427303 |
| 11009375 | 8848 | 7092213916 | 7095401348 | 588 | 2/1/2019 | 2/1/2019 | 7095401348 | -273.57 | Credit for 7092213916 |
| 11009375 | 8842 | 1055273726 | 7090250481 | 587 | 10/5/2018 | 2/2/2019 | 7090250481 | 1,136.80 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7090250482 | 587 | 10/5/2018 | 2/2/2019 | 7090250482 | 1,055.98 | Open in Full & Past Due |

**Crosswell International Account Statement**
**September 11, 2020**

| Account | PO Number | Reference | Document Number | Days Past Due | Document Date | Due Date | Invoice | Amount Due | Comments |
|---|---|---|---|---|---|---|---|---|---|
| 11009375 | 8842 | 1055273726 | 7090250483 | 587 | 10/5/2018 | 2/2/2019 | 7090250483 | 12,676.47 | Open in Full & Past Due |
| 11009375 | 8868 | 7091094906 | 7095482347 | 585 | 2/4/2019 | 2/4/2019 | 7095482347 | -171.38 | Credit for 7091094906 |
| 11009375 | 8918 | 7093498486 | 7095604295 | 583 | 2/6/2019 | 2/6/2019 | 7095604295 | -200.25 | Credit for 7093498486 |
| 11009375 | 8918 | 7094427317 | 7095604294 | 583 | 2/6/2019 | 2/6/2019 | 7095604294 | -287.00 | Credit for 7094427317 |
| 11009375 | 8842 | 1055273726 | 7090410386 | 582 | 10/10/2018 | 2/7/2019 | 7090410386 | 24,826.09 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7090569669 | 580 | 10/12/2018 | 2/9/2019 | 7090569669 | 537.10 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7090569670 | 580 | 10/12/2018 | 2/9/2019 | 7090569670 | 360.80 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7090567977 | 580 | 10/12/2018 | 2/9/2019 | 7090567977 | 6,421.97 | Open in Full & Past Due |
| 11009375 | 8793 | 1054057381 | 7090569668 | 580 | 10/12/2018 | 2/9/2019 | 7090569668 | 625.25 | Open in Full & Past Due |
| 11009375 | 8842 | 1055273726 | 7090567972 | 580 | 10/12/2018 | 2/9/2019 | 7090567972 | 201.96 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7090567973 | 580 | 10/12/2018 | 2/9/2019 | 7090567973 | 316.14 | Open in Full & Past Due |
| 11009375 | 8842 | 1055273726 | 7090567974 | 580 | 10/12/2018 | 2/9/2019 | 7090567974 | 51.68 | Open in Full & Past Due |
| 11009375 | 8842 | 1055273726 | 7090567975 | 580 | 10/12/2018 | 2/9/2019 | 7090567975 | 242.27 | Open in Full & Past Due |
| 11009375 | 8842 | 1055273726 | 7090567976 | 580 | 10/12/2018 | 2/9/2019 | 7090567976 | 1,207.85 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7090567978 | 580 | 10/12/2018 | 2/9/2019 | 7090567978 | 1,343.96 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7090567979 | 580 | 10/12/2018 | 2/9/2019 | 7090567979 | 228.32 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7090567980 | 580 | 10/12/2018 | 2/9/2019 | 7090567980 | 171.81 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7090648149 | 577 | 10/15/2018 | 2/12/2019 | 7090648149 | 214.50 | Open in Full & Past Due |
| 11009375 | 8848 | 7090567977 | 7095942378 | 576 | 2/13/2019 | 2/13/2019 | 7095942378 | -1,226.82 | Credit for 7090567977 |
| 11009375 | 8520 | 7080549824 | 7095942373 | 576 | 2/13/2019 | 2/13/2019 | 7095942373 | -225.09 | Credit for 7080549824 |
| 11009375 | 8848 | 7095558574 | 7095942370 | 576 | 2/13/2019 | 2/13/2019 | 7095942370 | -139.00 | Credit for 7095558574 |
| 11009375 | 8951 | 7094854391 | 7095942372 | 576 | 2/13/2019 | 2/13/2019 | 7095942372 | -48.00 | Credit for 7094854391 |
| 11009375 | 8868 | 1055814294 | 7090735212 | 575 | 10/17/2018 | 2/14/2019 | 7090735212 | 16,611.80 | Open in Full & Past Due |
| 11009375 | 8951 | 7094908791 | 7095997165 | 575 | 2/14/2019 | 2/14/2019 | 7095997165 | -233.93 | Credit for 7094908791 |
| 11009375 | 8848 | 1055583603 | 7090735210 | 575 | 10/17/2018 | 2/14/2019 | 7090735210 | 40.88 | Open in Full & Past Due |
| 11009375 | 8751 | 1053194558 | 7090735211 | 575 | 10/17/2018 | 2/14/2019 | 7090735211 | 352.10 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7090735213 | 575 | 10/17/2018 | 2/14/2019 | 7090735213 | 378.84 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7090735214 | 575 | 10/17/2018 | 2/14/2019 | 7090735214 | 670.35 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7090735215 | 575 | 10/17/2018 | 2/14/2019 | 7090735215 | 185.40 | Open in Full & Past Due |
| 11009375 | 8842 | 1055273726 | 7090735216 | 575 | 10/17/2018 | 2/14/2019 | 7090735216 | 4,042.98 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7090735217 | 575 | 10/17/2018 | 2/14/2019 | 7090735217 | 445.92 | Open in Full & Past Due |
| 11009375 | 8842 | 1055273726 | 7090735209 | 575 | 10/17/2018 | 2/14/2019 | 7090735209 | 10,370.14 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7090776984 | 574 | 10/18/2018 | 2/15/2019 | 7090776984 | 1,546.33 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7090794968 | 574 | 10/18/2018 | 2/15/2019 | 7090794968 | 961.77 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7090794969 | 574 | 10/18/2018 | 2/15/2019 | 7090794969 | 802.38 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7090794970 | 574 | 10/18/2018 | 2/15/2019 | 7090794970 | 618.29 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7090864883 | 573 | 10/19/2018 | 2/16/2019 | 7090864883 | 400.89 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7090864884 | 573 | 10/19/2018 | 2/16/2019 | 7090864884 | 4,828.97 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7090864885 | 573 | 10/19/2018 | 2/16/2019 | 7090864885 | 2,011.05 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7090864886 | 573 | 10/19/2018 | 2/16/2019 | 7090864886 | 4,548.47 | Open in Full & Past Due |
| 11009375 | 8951 | 7095078839 | 7096197572 | 570 | 2/19/2019 | 2/19/2019 | 7096197572 | -19.09 | Credit for 7095078839 |
| 11009375 | 8868 | 1055814294 | 7090976239 | 570 | 10/22/2018 | 2/19/2019 | 7090976239 | 32.55 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091094906 | 568 | 10/24/2018 | 2/21/2019 | 7091094906 | 5,845.91 | Open in Full & Past Due |
| 11009375 | Event-2018-01390 | 2001436070 | 7096360091 | 568 | 2/21/2019 | 2/21/2019 | 7096360091 | -26,229.00 | RGA 2001436070 |

**Crosswell International Account Statement**
**September 11, 2020**

| Account | PO Number | Reference | Document Number | Days Past Due | Document Date | Due Date | Invoice | Amount Due | Comments |
|---|---|---|---|---|---|---|---|---|---|
| 11009375 | 8823 | 1054926677 | 7091094902 | 568 | 10/24/2018 | 2/21/2019 | 7091094902 | 1,433.85 | Open in Full & Past Due |
| 11009375 | 8709 | 1052423253 | 7091094903 | 568 | 10/24/2018 | 2/21/2019 | 7091094903 | 125.05 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091094904 | 568 | 10/24/2018 | 2/21/2019 | 7091094904 | 520.06 | Open in Full & Past Due |
| 11009375 | 8751 | 1053194558 | 7091094905 | 568 | 10/24/2018 | 2/21/2019 | 7091094905 | 650.68 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091181353 | 567 | 10/25/2018 | 2/22/2019 | 7091181353 | 188.18 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091397917 | 561 | 10/31/2018 | 2/28/2019 | 7091397917 | 114.80 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091397918 | 561 | 10/31/2018 | 2/28/2019 | 7091397918 | 1,170.65 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091397919 | 561 | 10/31/2018 | 2/28/2019 | 7091397919 | 82.99 | Open in Full & Past Due |
| 11009375 | 8793 | 1054057381 | 7091499025 | 559 | 11/2/2018 | 3/2/2019 | 7091499025 | 914.02 | Open in Full & Past Due |
| 11009375 | 8793 | 1054057381 | 7091499024 | 559 | 11/2/2018 | 3/2/2019 | 7091499024 | 783.45 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091499019 | 559 | 11/2/2018 | 3/2/2019 | 7091499019 | 425.50 | Open in Full & Past Due |
| 11009375 | 8793 | 1054057381 | 7091499023 | 559 | 11/2/2018 | 3/2/2019 | 7091499023 | 599.20 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091499022 | 559 | 11/2/2018 | 3/2/2019 | 7091499022 | 342.76 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091499020 | 559 | 11/2/2018 | 3/2/2019 | 7091499020 | 12,510.74 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091499021 | 559 | 11/2/2018 | 3/2/2019 | 7091499021 | 98.49 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091673518 | 554 | 11/7/2018 | 3/7/2019 | 7091673518 | 74.16 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7091673515 | 554 | 11/7/2018 | 3/7/2019 | 7091673515 | 116.85 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091648734 | 554 | 11/7/2018 | 3/7/2019 | 7091648734 | 183.68 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091673517 | 554 | 11/7/2018 | 3/7/2019 | 7091673517 | 287.00 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091673516 | 554 | 11/7/2018 | 3/7/2019 | 7091673516 | 356.55 | Open in Full & Past Due |
| 11009375 | 8842 | 1055273726 | 7091673514 | 554 | 11/7/2018 | 3/7/2019 | 7091673514 | 9,539.86 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091716306 | 553 | 11/8/2018 | 3/8/2019 | 7091716306 | 31.16 | Open in Full & Past Due |
| 11009375 | 8751 | 1053194558 | 7091735823 | 553 | 11/8/2018 | 3/8/2019 | 7091735823 | 906.75 | Open in Full & Past Due |
| 11009375 | 8793 | 1054057381 | 7091735824 | 553 | 11/8/2018 | 3/8/2019 | 7091735824 | 2,632.50 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7091714354 | 553 | 11/8/2018 | 3/8/2019 | 7091714354 | 280.44 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091769907 | 552 | 11/9/2018 | 3/9/2019 | 7091769907 | 280.44 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7091983629 | 547 | 11/14/2018 | 3/14/2019 | 7091983629 | 298.50 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7091983630 | 547 | 11/14/2018 | 3/14/2019 | 7091983630 | 993.14 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7092092735 | 545 | 11/16/2018 | 3/16/2019 | 7092092735 | 430.50 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7092092736 | 545 | 11/16/2018 | 3/16/2019 | 7092092736 | 7,037.55 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7092092737 | 545 | 11/16/2018 | 3/16/2019 | 7092092737 | 309.64 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7092092738 | 545 | 11/16/2018 | 3/16/2019 | 7092092738 | 3,957.00 | Open in Full & Past Due |
| 11009375 | 8868 | 1055583603 | 7092177009 | 542 | 11/19/2018 | 3/19/2019 | 7092177009 | 177.50 | Open in Full & Past Due |
| 11009375 | 8751 | 1053194558 | 7092177514 | 542 | 11/19/2018 | 3/19/2019 | 7092177514 | 93.50 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7092213915 | 541 | 11/20/2018 | 3/20/2019 | 7092213915 | 292.10 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7092213916 | 541 | 11/20/2018 | 3/20/2019 | 7092213916 | 746.10 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7092306961 | 540 | 11/21/2018 | 3/21/2019 | 7092306961 | 91.84 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7092316949 | 540 | 11/21/2018 | 3/21/2019 | 7092316949 | 140.25 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7092311343 | 540 | 11/21/2018 | 3/21/2019 | 7092311343 | 22,707.39 | Open in Full & Past Due |
| 11009375 | 8887 | 7094854392 | 7097922181 | 534 | 3/27/2019 | 3/27/2019 | 7097922181 | -192.00 | Credit for 7094854392 |
| 11009375 | 8868 | 1055814294 | 7092446434 | 533 | 11/28/2018 | 3/28/2019 | 7092446434 | 324.31 | Open in Full & Past Due |
| 11009375 | 8892 | 1056779406 | 7092446435 | 533 | 11/28/2018 | 3/28/2019 | 7092446435 | 1,258.29 | Open in Full & Past Due |
| 11009375 | 8892 | 1056779406 | 7092446436 | 533 | 11/28/2018 | 3/28/2019 | 7092446436 | 316.56 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7092446437 | 533 | 11/28/2018 | 3/28/2019 | 7092446437 | 102.52 | Open in Full & Past Due |

**Crosswell International Account Statement**
September 11, 2020

| Account | PO Number | Reference | Document Number | Days Past Due | Document Date | Due Date | Invoice | Amount Due | Comments |
|---|---|---|---|---|---|---|---|---|---|
| 11009375 | 8848 | 1055583603 | 7092446438 | 533 | 11/28/2018 | 3/28/2019 | 7092446438 | 4,387.60 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7092538940 | 532 | 11/29/2018 | 3/29/2019 | 7092538940 | 6,580.82 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7092671143 | 531 | 11/30/2018 | 3/30/2019 | 7092671143 | 179.41 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7092671144 | 531 | 11/30/2018 | 3/30/2019 | 7092671144 | 1,078.25 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7092671146 | 531 | 11/30/2018 | 3/30/2019 | 7092671146 | 2,295.06 | Open in Full & Past Due |
| 11009375 | 8842 | 1055273726 | 7092671147 | 531 | 11/30/2018 | 3/30/2019 | 7092671147 | 5,854.94 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7092671148 | 531 | 11/30/2018 | 3/30/2019 | 7092671148 | 540.71 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7092671149 | 531 | 11/30/2018 | 3/30/2019 | 7092671149 | 558.90 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7092671150 | 531 | 11/30/2018 | 3/30/2019 | 7092671150 | 158.28 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7092671145 | 531 | 11/30/2018 | 3/30/2019 | 7092671145 | 15,190.18 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7092837200 | 526 | 12/5/2018 | 4/4/2019 | 7092837200 | 1,009.93 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7092837201 | 526 | 12/5/2018 | 4/4/2019 | 7092837201 | 937.86 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7092837202 | 526 | 12/5/2018 | 4/4/2019 | 7092837202 | 2,347.10 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7092961985 | 524 | 12/7/2018 | 4/6/2019 | 7092961985 | 1,254.51 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7092961986 | 524 | 12/7/2018 | 4/6/2019 | 7092961986 | 282.27 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7092961987 | 524 | 12/7/2018 | 4/6/2019 | 7092961987 | 1,328.49 | Open in Full & Past Due |
| 11009375 | 8868 | 1055814294 | 7092957592 | 524 | 12/7/2018 | 4/6/2019 | 7092957592 | 198.00 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7092957591 | 524 | 12/7/2018 | 4/6/2019 | 7092957591 | 2,259.99 | Open in Full & Past Due |
| 11009375 | 8793 | 1054057381 | 7093274811 | 518 | 12/13/2018 | 4/12/2019 | 7093274811 | 90.72 | Open in Full & Past Due |
| 11009375 | 8793 | 1054057381 | 7093263886 | 518 | 12/13/2018 | 4/12/2019 | 7093263886 | 233.75 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7093322154 | 517 | 12/14/2018 | 4/13/2019 | 7093322154 | 277.20 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7093399333 | 514 | 12/17/2018 | 4/16/2019 | 7093399333 | 17.75 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7093399332 | 514 | 12/17/2018 | 4/16/2019 | 7093399332 | 88.75 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7093498484 | 512 | 12/19/2018 | 4/18/2019 | 7093498484 | 806.69 | Open in Full & Past Due |
| 11009375 | 8823 | 1054926677 | 7093498485 | 512 | 12/19/2018 | 4/18/2019 | 7093498485 | 650.68 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7093498487 | 512 | 12/19/2018 | 4/18/2019 | 7093498487 | 4,621.01 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7093498488 | 512 | 12/19/2018 | 4/18/2019 | 7093498488 | 71.22 | Open in Full & Past Due |
| 11009375 | 8892 | 1056779406 | 7093498489 | 512 | 12/19/2018 | 4/18/2019 | 7093498489 | 162.36 | Open in Full & Past Due |
| 11009375 | 8793 | 1054057381 | 7093498490 | 512 | 12/19/2018 | 4/18/2019 | 7093498490 | 340.00 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7093498486 | 512 | 12/19/2018 | 4/18/2019 | 7093498486 | 30,939.79 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7093567478 | 511 | 12/20/2018 | 4/19/2019 | 7093567478 | 507.43 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7093567479 | 511 | 12/20/2018 | 4/19/2019 | 7093567479 | 4,489.91 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7093556728 | 510 | 12/21/2018 | 4/20/2019 | 7093556728 | 240.65 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7093953386 | 501 | 12/30/2018 | 4/29/2019 | 7093953386 | 92.26 | Open in Full & Past Due |
| 11009375 | 8928 | 1057830734 | 7093967428 | 500 | 12/31/2018 | 4/30/2019 | 7093967428 | 3,086.49 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094240511 | 492 | 1/8/2019 | 5/8/2019 | 7094240511 | 1,361.95 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094240510 | 492 | 1/8/2019 | 5/8/2019 | 7094240510 | 534.70 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7094245871 | 492 | 1/8/2019 | 5/8/2019 | 7094245871 | 12,368.57 | Open in Full & Past Due |
| 11009375 | 8925 | 1057814546 | 7094245875 | 492 | 1/8/2019 | 5/8/2019 | 7094245875 | 14,951.34 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094289206 | 491 | 1/9/2019 | 5/9/2019 | 7094289206 | 275.52 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7094427313 | 489 | 1/11/2019 | 5/11/2019 | 7094427313 | 487.71 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7094427304 | 489 | 1/11/2019 | 5/11/2019 | 7094427304 | 1,861.08 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094427312 | 489 | 1/11/2019 | 5/11/2019 | 7094427312 | 1,652.80 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7094427311 | 489 | 1/11/2019 | 5/11/2019 | 7094427311 | 162.57 | Open in Full & Past Due |

**Crosswell International Account Statement**
**September 11, 2020**

| Account | PO Number | Reference | Document Number | Days Past Due | Document Date | Due Date | Invoice | Amount Due | Comments |
|---------|-----------|-----------|-----------------|---------------|---------------|----------|---------|-----------|----------|
| 11009375 | 8918 | 1057644353 | 7094427302 | 489 | 1/11/2019 | 5/11/2019 | 7094427302 | 330.56 | Open in Full & Past Due |
| 11009375 | 8925 | 1057814546 | 7094427301 | 489 | 1/11/2019 | 5/11/2019 | 7094427301 | 7,131.74 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094427300 | 489 | 1/11/2019 | 5/11/2019 | 7094427300 | 231.94 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094427314 | 489 | 1/11/2019 | 5/11/2019 | 7094427314 | 31.56 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094427315 | 489 | 1/11/2019 | 5/11/2019 | 7094427315 | 7,498.92 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7094427310 | 489 | 1/11/2019 | 5/11/2019 | 7094427310 | 58.64 | Open in Full & Past Due |
| 11009375 | 8925 | 1057814546 | 7094427309 | 489 | 1/11/2019 | 5/11/2019 | 7094427309 | 370.48 | Open in Full & Past Due |
| 11009375 | 8928 | 1057830734 | 7094427305 | 489 | 1/11/2019 | 5/11/2019 | 7094427305 | 237.42 | Open in Full & Past Due |
| 11009375 | 8925 | 1057814546 | 7094427306 | 489 | 1/11/2019 | 5/11/2019 | 7094427306 | 961.00 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094427308 | 489 | 1/11/2019 | 5/11/2019 | 7094427308 | 202.95 | Open in Full & Past Due |
| 11009375 | 8892 | 1056779406 | 7094427307 | 489 | 1/11/2019 | 5/11/2019 | 7094427307 | 118.71 | Open in Full & Past Due |
| 11009375 | 8928 | 1057830734 | 7094427316 | 489 | 1/11/2019 | 5/11/2019 | 7094427316 | 933.57 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094427317 | 489 | 1/11/2019 | 5/11/2019 | 7094427317 | 287.00 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094427303 | 489 | 1/11/2019 | 5/11/2019 | 7094427303 | 3,494.92 | Open in Full & Past Due |
| 11009375 | 8928 | 1057830734 | 7094636037 | 484 | 1/16/2019 | 5/16/2019 | 7094636037 | 405.90 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7094636038 | 484 | 1/16/2019 | 5/16/2019 | 7094636038 | 37.11 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094636039 | 484 | 1/16/2019 | 5/16/2019 | 7094636039 | 1,899.36 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094636040 | 484 | 1/16/2019 | 5/16/2019 | 7094636040 | 821.67 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094636041 | 484 | 1/16/2019 | 5/16/2019 | 7094636041 | 22.55 | Open in Full & Past Due |
| 11009375 | 8936 | 1058228467 | 7094636042 | 484 | 1/16/2019 | 5/16/2019 | 7094636042 | 344.40 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094636043 | 484 | 1/16/2019 | 5/16/2019 | 7094636043 | 1,820.22 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094650674 | 484 | 1/16/2019 | 5/16/2019 | 7094650674 | 142.00 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094636044 | 484 | 1/16/2019 | 5/16/2019 | 7094636044 | 22.55 | Open in Full & Past Due |
| 11009375 | 8925 | 1057814546 | 7094636045 | 484 | 1/16/2019 | 5/16/2019 | 7094636045 | 4,285.38 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7094714656 | 483 | 1/17/2019 | 5/17/2019 | 7094714656 | 165.90 | Open in Full & Past Due |
| 11009375 | 8936 | 1058228467 | 7094714642 | 483 | 1/17/2019 | 5/17/2019 | 7094714642 | 431.20 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094702182 | 482 | 1/18/2019 | 5/18/2019 | 7094702182 | 472.80 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7094850948 | 479 | 1/21/2019 | 5/21/2019 | 7094850948 | 3,446.71 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7094908791 | 477 | 1/23/2019 | 5/23/2019 | 7094908791 | 28,741.12 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7094854391 | 477 | 1/23/2019 | 5/23/2019 | 7094854391 | 3,117.12 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7094854392 | 477 | 1/23/2019 | 5/23/2019 | 7094854392 | 240.00 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094908790 | 477 | 1/23/2019 | 5/23/2019 | 7094908790 | 717.50 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7094908792 | 477 | 1/23/2019 | 5/23/2019 | 7094908792 | 7.35 | Open in Full & Past Due |
| 11009375 | 8960 | 1058632122 | 7094908793 | 477 | 1/23/2019 | 5/23/2019 | 7094908793 | 943.53 | Open in Full & Past Due |
| 11009375 | 8959 | 1058632116 | 7094908794 | 477 | 1/23/2019 | 5/23/2019 | 7094908794 | 4,657.15 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094908795 | 477 | 1/23/2019 | 5/23/2019 | 7094908795 | 152.88 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7094908796 | 477 | 1/23/2019 | 5/23/2019 | 7094908796 | 602.20 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7094854388 | 477 | 1/23/2019 | 5/23/2019 | 7094854388 | 96.00 | Open in Full & Past Due |
| 11009375 | 8960 | 1058632122 | 7094854389 | 477 | 1/23/2019 | 5/23/2019 | 7094854389 | 230.65 | Open in Full & Past Due |
| 11009375 | 8959 | 1058632116 | 7094854390 | 477 | 1/23/2019 | 5/23/2019 | 7094854390 | 1,752.80 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095032320 | 476 | 1/24/2019 | 5/24/2019 | 7095032320 | 551.04 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095078839 | 475 | 1/25/2019 | 5/25/2019 | 7095078839 | 14,296.10 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7095078837 | 475 | 1/25/2019 | 5/25/2019 | 7095078837 | 7,555.84 | Open in Full & Past Due |
| 11009375 | 8959 | 1058632116 | 7095078838 | 475 | 1/25/2019 | 5/25/2019 | 7095078838 | 170.10 | Open in Full & Past Due |

**Crosswell International Account Statement**
September 11, 2020

| Account | PO Number | Reference | Document Number | Days Past Due | Document Date | Due Date | Invoice | Amount Due | Comments |
|---|---|---|---|---|---|---|---|---|---|
| 11009375 | 8960 | 1058632122 | 7095078840 | 475 | 1/25/2019 | 5/25/2019 | 7095078840 | 89.38 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7095078841 | 475 | 1/25/2019 | 5/25/2019 | 7095078841 | 38.22 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095078842 | 475 | 1/25/2019 | 5/25/2019 | 7095078842 | 64.86 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095078843 | 475 | 1/25/2019 | 5/25/2019 | 7095078843 | 391.69 | Open in Full & Past Due |
| 11009375 | 8959 | 1058632116 | 7095078844 | 475 | 1/25/2019 | 5/25/2019 | 7095078844 | 2,721.60 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095207506 | 471 | 1/29/2019 | 5/29/2019 | 7095207506 | 3,343.62 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095177723 | 471 | 1/29/2019 | 5/29/2019 | 7095177723 | 282.27 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095177724 | 471 | 1/29/2019 | 5/29/2019 | 7095177724 | 165.66 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095177725 | 471 | 1/29/2019 | 5/29/2019 | 7095177725 | 1,260.77 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095177726 | 471 | 1/29/2019 | 5/29/2019 | 7095177726 | 154.00 | Open in Full & Past Due |
| 11009375 | 8962 | 1058632778 | 7095207497 | 471 | 1/29/2019 | 5/29/2019 | 7095207497 | 446.49 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095207498 | 471 | 1/29/2019 | 5/29/2019 | 7095207498 | 802.02 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7095207499 | 471 | 1/29/2019 | 5/29/2019 | 7095207499 | 148.06 | Open in Full & Past Due |
| 11009375 | 8960 | 1058632122 | 7095207500 | 471 | 1/29/2019 | 5/29/2019 | 7095207500 | 184.52 | Open in Full & Past Due |
| 11009375 | 8887 | 1056700892 | 7095207501 | 471 | 1/29/2019 | 5/29/2019 | 7095207501 | 1,272.99 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095207502 | 471 | 1/29/2019 | 5/29/2019 | 7095207502 | 592.73 | Open in Full & Past Due |
| 11009375 | 8962 | 1058632778 | 7095207503 | 471 | 1/29/2019 | 5/29/2019 | 7095207503 | 892.98 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7095207504 | 471 | 1/29/2019 | 5/29/2019 | 7095207504 | 1,649.33 | Open in Full & Past Due |
| 11009375 | 8960 | 1058632122 | 7095207505 | 471 | 1/29/2019 | 5/29/2019 | 7095207505 | 206.64 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095375871 | 468 | 2/1/2019 | 6/1/2019 | 7095375871 | 1,725.51 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7095375872 | 468 | 2/1/2019 | 6/1/2019 | 7095375872 | 1,528.75 | Open in Full & Past Due |
| 11009375 | 8848 | 1055583603 | 7095558574 | 463 | 2/6/2019 | 6/6/2019 | 7095558574 | 18,212.30 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7095558573 | 463 | 2/6/2019 | 6/6/2019 | 7095558573 | 182.79 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095558575 | 463 | 2/6/2019 | 6/6/2019 | 7095558575 | 3,078.94 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095558576 | 463 | 2/6/2019 | 6/6/2019 | 7095558576 | 175.10 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095558577 | 463 | 2/6/2019 | 6/6/2019 | 7095558577 | 588.94 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095682756 | 461 | 2/8/2019 | 6/8/2019 | 7095682756 | 1,291.09 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095682757 | 461 | 2/8/2019 | 6/8/2019 | 7095682757 | 1,260.02 | Open in Full & Past Due |
| 11009375 | 8918 | 1057644353 | 7095682758 | 461 | 2/8/2019 | 6/8/2019 | 7095682758 | 232.23 | Open in Full & Past Due |
| 11009375 | 8925 | 1057814546 | 7095782741 | 458 | 2/11/2019 | 6/11/2019 | 7095782741 | 1,917.35 | Open in Full & Past Due |
| 11009375 | 8951 | 1058441588 | 7095816345 | 457 | 2/12/2019 | 6/12/2019 | 7095816345 | 249.37 | Open in Full & Past Due |
| 11009375 | 8959 | 1058632116 | 7095816344 | 457 | 2/12/2019 | 6/12/2019 | 7095816344 | 338.60 | Open in Full & Past Due |
| 11009375 | 8925 | 1057814546 | 7095854483 | 456 | 2/13/2019 | 6/13/2019 | 7095854483 | 680.35 | Open in Full & Past Due |
| 11009375 | 8611 | 7082989227 | 7101690339 | 450 | 6/19/2019 | 6/19/2019 | 7101690339 | -97.80 | Credit for 7082989227 |
| 11009375 | 8611 | 7082989229 | 7101690338 | 450 | 6/19/2019 | 6/19/2019 | 7101690338 | -56.17 | Credit for 7082989229 |
| 11009375 | 8486 | 7079800351 | 7102155863 | 442 | 6/27/2019 | 6/27/2019 | 7102155863 | -373.09 | Credit for 7079800351 |
| | | | | | | | | 542,404.63 | |